IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE ROSARIO                     :      CIVIL ACTION
                                 :
            v.                   :
                                 :
SETH WILLIAMS, et al.            :      NO. 13-1945

MEMORANDUM

McLaughlin, J.                              January 29, 2014

          This action arises from the prosecution of the

plaintiff for the murder of an inmate in the Philadelphia

Industrial Correction Center ("PICC"), of which he was found not

guilty.  The plaintiff, in a pro se complaint, brings claims

under 42 U.S.C. § 1983 for violations of the Fifth, Eighth, and

Fourteenth Amendments, as well as for state law torts and

violations of the Pennsylvania Constitution.  Rosario alleges

that he was placed in solitary confinement and administrative

segregation, which violated his due process rights and to be

free from cruel and unusual punishment.  He also alleges that

members of the District Attorney's Office are responsible for

using false testimony during his prosecution.

          Rosario brings claims against R. Seth Williams, the

District Attorney of Philadelphia, Lynne Abraham, the former

District Attorney, and Assistant District Attorneys John Doyle

and Edward McCann.  He also brings suit against the City of

Philadelphia, Police Officer Gregory Santamala, Police Officer

Gerald Lynch, Police Officer William Hility, John P. Delaney, warden of the Philadelphia Detention Center, and Joyce Adams, warden of the PICC.[1]

The Court considers here motions to dismiss by John P. Delaney and Joyce Adams (the "Warden Defendants"), and by R. Seth Williams, Lynne Abraham, John Doyle, and Edward McCann (the "DA Defendants"), both pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court will grant both the DA Defendants' and the Warden Defendants' motions in their entirety.

---

[1] Defendants the City of Philadelphia, Gerald Lynch, Gregory Santamala, and William Hility have answered the complaint. Rosario also named Richi Grace, a supervisor at PICC, in his lawsuit.  Counsel for the City has not yet been able to identify a person by that name working for the Philadelphia prison system.  1/9/14 Rule 16 Conf. Trans. 4:4-6:4.  Lastly, Rosario sued unknown City of Philadelphia police officers, unknown City of Philadelphia prison officials, and unknown state correctional officials.

I.   Background[2]

On October 4, 2006, inmate Lance Mears was stabbed to death inside the PICC.  Compl. ¶ 21.  Rosario was held in administrative segregation when the death of Lance Mears occurred.  He was not released from administrative segregation until he "lost a prior case he was fighting."  1/9/14 Rule 16 Conf. Trans. 15:1-5.

Rosario was an inmate at the PICC at the time of the murder of Lance Mears.  Id.  On October 7, 2006, Rosario was transferred from the PICC to the Philadelphia Detention Center.  Rosario was placed into maximum security in solitary confinement for between six and eight months.  That placement was at the request of the Philadelphia Police Department and by order of the Philadelphia District Attorney's Office.  During his time there, Rosario attended several hearings on the status of his confinement, where he was told that he would be held in

_____

[2] The Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the non-moving party, while disregarding any legal conclusions.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

As part of the Court's general practice with pro se litigants, the Court held an on-the-record Rule 16 conference on January 9, 2014, during which the Court allowed the plaintiff to respond to the pending motions to dismiss and give a complete explanation of the facts of the case.  It is the Court's practice to incorporate facts alleged by the pro se litigant during the Rule 16 conference into the complaint.

administrative segregation until the detectives gave notice to the prison and the district attorney that the investigation was over or that he was to be charged.  Id. ¶ 22; 1/9/14 Rule 16 Conf. Trans. 16:13-17:2.  On or about November 15, 2008,[3] Rosario was arrested and charged with the murder of Lance Mears.[4]

Rosario alleges that the defendants, pursuant to a conspiracy, manipulated and coached one of the prosecution's witnesses and then withheld that they had done so.  Compl. ¶ 23. Carl Landsowne, the Commonwealth's witness at Rosario's preliminary hearing and at Rosario's trial, recanted his testimony in an affidavit attached to complaint.  Carl Landsowne Aff., ECF No. 1, at 10; 1/9/14 Rule 16 Conf. Trans. 13:2-14:4, 22:10-13.  In that affidavit, written on April 15, 2010,

---

[3] Rosario also lists the date of his arrest as November 14, 2008.  Compl. at 1.

[4] A district court may consider matters of public record in ruling on a motion to dismiss.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).  The Court notes that, based on the public records attached to the DA Defendants' motion to dismiss, Rosario was already incarcerated at the time of his arrest for a conviction of murder in the third degree in an unrelated incident.  On May 5, 2005, Rosario was arrested and charged with two counts of murder in the third degree and related offenses. On March 27, 2007, Rosario was convicted, and on May 24, 2007, he was sentenced to life imprisonment for murder and to consecutive sentences on some of the remaining charges.  Thus, during the relevant times referred to in the complaint, Rosario was serving a life sentence in an unrelated case.  See DA Defendants' Mot., Exs. A-B, ECF No. 6-1.

Landsowne avers that the statement he gave on May 5, 2009, at Rosario's preliminary hearing was false.  "I was forced by the District Attorney to testify on Mr. Rosario or I myself would [have] . . . been charged for the murder because I was the victim['s] cell-mate."  Carl Landsowne Aff.  Rosario alleges that this information proves that he did not commit the crime against Lance Mears.  Compl. ¶ 32.

Assistant District Attorneys Doyle and McCann were assigned to Rosario's prosecution on April 15, 2010.  Prior to that date, the defendants were made aware by Carl Landsowne that he wanted to submit an affidavit to recant his prior statements.  "Defendants Doyle, McCann, Lynch, [and] Santamala . . . instead of providing the truth . . . , instead threatened the witness with criminal-charges and incarceration if he did not testify as to his prior-testimony, or he'd be charged with first degree murder."  Id. ¶ 39; see also id. ¶ 30.  Rosario also alleges that Landsowne informed the jury of the misconduct related to the Philadelphia District Attorney's Office and the Philadelphia Police Department.  Id. ¶ 26.

On March 10, 2011, Rosario was transferred to SCI-Graterford, housed on the death row unit, and staff was informed that he was a pending death row inmate.  Id. ¶ 24.  Rosario was held in administrative segregation awaiting his preliminary

hearing, and he was placed in and out of administrative segregation following his preliminary hearing through the trial "due to this case."  1/9/14 Rule 16 Conf. Trans. 15:6-12. Rosario was held in solitary confinement for months during this time.  Id. at 15:17-20.

Rosario's transfer and placement was at the direction of the Philadelphia District Attorney's Office because he was a pending capital case.  Id. ¶ 24; 1/9/14 Rule 16 Conf. Trans. 14:4-21.  He also claims that the Warden Defendants failed to follow protocol because Rosario was continually being held in the solitary confinement unit at the county level without any review process.  The Warden Defendants failed to address his grievances, instead relying on orders from defendants Lynch, Santamala, Doyle, McCann, and Abraham to keep him within solitary confinement.  Id. ¶ 40.

On or about March 22, 2012, a jury found Rosario not guilty.  Id. ¶ 3, 26.  Rosario claims that, as a result of his arrest and prosecution, he was imprisoned for over six years. Id. ¶ 4.

As a result of Rosario's arrest, incarceration, and trial, he and his daughter became part of a family court action. A Custody Master at the Court of Common Pleas terminated his custody rights to his daughter.  Id. ¶ 47.  Rosario states that

he suffered "[n]o injuries related to [the] event." He does state, however, that he suffered "extreme physical distress and ailments, mental pain and anguish," and a psychological disorder from which his recovery is questionable. Compl. at 3 (complaint form); see also 1/9/14 Rule 16 Conf. Trans. 15:10-16:4 (discussing psychological symptoms).

II. Procedural History

A. The Plaintiff's Claims

Rosario brings the following claims against the defendants in both their official and individual capacities:

(1) § 1983 claims for violation of the Fifth, Eighth, and Fourteenth Amendments: Rosario claims that he was denied equal protection under the Fourteenth Amendment, due process under the Fifth and Fourteenth Amendments, and his freedom from cruel and unusual punishment under the Eighth Amendment. Compl. ¶ 67. Rosario argues that his parental rights were terminated, which constituted cruel and unusual punishment and a violation of due process. Id. ¶¶ 67-70.

(2) Intentional infliction of emotional distress: Rosario does not identify the specific conduct of the defendants underlying this claim but states that he suffered "serious

mental anguish, pain and suffering, and psychological damages in which Plaintiff is still suffering related thereto." Compl. ¶ 74. The Court interprets these allegations to be related to his prosecution and placement in solitary confinement.

(3) Cruel and unusual punishment: Rosario alleges that his Eighth Amendment rights were violated because he was unlawfully arrested, imprisoned, and prosecuted for crimes he did not commit. Compl. ¶ 76. He also alleges that the defendants "fabricate[d], manipulate[d], coach[ed] witnesses and withheld evidence of the truth from Plaintiff in an effort to falsely implicate and convict Plaintiff for capital murder." Id. ¶ 77. Furthermore, his placement in solitary confinement violated his due process rights as a pretrial detainee. Id. The Court interprets these allegations to be part of Rosario's § 1983 claim alleging violations of his Eighth Amendment rights, as well as alleging the state law claims of malicious prosecution, abuse of process, false arrest, and false imprisonment.

(4) Negligence: Rosario alleges that the defendants failed to present evidence showing that he did not cause the death of Lance Mears. Furthermore, the "City of Philadelphia Defendants" acted upon direction from the DA Defendants and "had a[n] affirmative duty to make formal-inquiries as superiors of

the City of Philadelphia Prisons Department" when Rosario was
placed into solitary confinement.  Compl. ¶ 79.

       (5)  Violation of public trust:  Rosario alleges that
the "City of Philadelphia Defendants" failed to notify the
relevant court officials that he has been wrongfully charged,
arrested, and imprisoned for the murder of Lance Mears based on
evidence provided by one of the prosecution witnesses.  Compl.
¶ 81.  The defendants then violated the public trust by failing
to relay that evidence of innocence.  These actions allegedly
violated several provisions of the Pennsylvania Constitution.[5]
Id. ¶ 82.

_____

[5] The Court is unable to find any Pennsylvania state law
claim for "violation of public trust."  Such language is
typically used to describe certain types of crimes with regard
to sentencing.  See, e.g., United States v. Smith, 839 F.2d 175,
181 (3d Cir. 1988); Commonwealth ex rel. Baldwin v. Richard, 751
A.2d 647, 655 n.4 (Pa. 2000) (Castille, J., concurring and
dissenting); Commonwealth v. Dickter, 465 A.2d 1, 3 (Pa. Super
Ct. 1983).  Ethical violations by government officials or
lawyers may also be considered violative of the public trust.
See, e.g., Office of Disciplinary Counsel v. Tumini, 453 A.2d
310, 313 (Pa. 1982), reinstatement granted sub nom. Matter of
Tumini, 574 A.2d 599 (Pa. 1990); Keller v. State Ethics Comm'n,
860 A.2d 659, 670 (Pa. Commw. Ct. 2004); Susquehanna Cnty. Tax
Claim Bureau v. Aliano, 803 A.2d 234, 237 (Pa. Commw. Ct. 2002).
None of those cases, however, discuss a civil cause of action
for such behavior.

    Furthermore, "neither Pennsylvania statutory authority, nor
appellate case law has authorized the award of monetary damages
for a violation of the Pennsylvania Constitution."  Jones v.
City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006); see

Based on the counts listed in the complaint, as well as the allegations presented by Rosario in his complaint and during the on-the-record Rule 16 conference, the Court interprets Rosario's causes of action to be under § 1983, as well as state law claims for negligence, malicious prosecution, abuse of process, false arrest, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, and civil conspiracy.[6]

---

also R.H.S. v. Allegheny Cnty. Dep't of Human Servs., Office of Mental Health, 936 A.2d 1218, 1226 (Pa. Commw. Ct. 2007). There is no Pennsylvania state case law that permits an action for monetary damages based on a claimed violation of the state constitution. Balletta v. Spadoni, 47 A.3d 183, 193 (Pa. Commw. Ct. 2012). A plaintiff can, however, pursue injunctive and declaratory relief under the Pennsylvania Constitution. Hall v. Raech, No. 08-5020, 2009 WL 811503, at *6 n.13 (E.D. Pa. Mar. 25, 2009) (citing Jones, 890 A.2d at 1212 n.37). The Court has considered Rosario's requests for injunctive relief, and those requests do not state a possible remedy for any state constitutional violation.

[6] Although the DA Defendants discuss Rosario's conspiracy claim as arising under 42 U.S.C. § 1985, nowhere in the complaint does Rosario cite to that statute. Even construing Rosario's complaint liberally, the Court finds it more appropriate to interpret Rosario's conspiracy allegations as a civil conspiracy claim under Pennsylvania law.

B. <u>The Motions to Dismiss</u>

    1.   <u>The Warden Defendants</u>

The Warden Defendants have moved to dismiss Rosario's complaint pursuant to Rule 12(b)(6).  The Warden Defendants argue that Rosario's claims against them in their official capacity fail because such a suit is properly treated as an action against the City of Philadelphia, which is also a party to this lawsuit.

The Warden Defendants also argue that there is no individual capacity claim under § 1983 because there is no respondeat superior liability and Rosario has not alleged any specific actions by the Warden Defendants that rise to the level of unconstitutional conduct.

Third, the Warden Defendants allege that there are no Eighth Amendment violations because Rosario's allegations regarding solitary confinement do not rise to the level of an unconstitutional condition of confinement.

Lastly, the Warden Defendants argue that Rosario's due process claims are deficient because he lacks a liberty interest in remaining housed in the general population or in remaining free from more restrictive segregated housing, such as solitary confinement.

Although the Warden Defendants address Rosario's claims under § 1983, they do not even mention the state law claims that Rosario brings against all defendants, such as intentional infliction of emotional distress. The Warden Defendants further fail to address Rosario's allegations of a conspiracy.

### 2. The DA Defendants

The DA Defendants have also moved to dismiss Rosario's complaint pursuant to Rule 12(b)(6). First, the DA Defendants argue that Rosario's complaint lacks the basic specificity required under Rule 8(a) and fails to delineate the actions of each defendant.

Second, the DA Defendants argue that they have absolute prosecutorial immunity against Rosario's individual capacity claims under § 1983 and against Rosario's conspiracy claims under § 1985.

Third, the DA Defendants argue that Rosario cannot state an official capacity claim for municipal liability. First, Assistant District Attorneys Doyle and McCann are not policymakers and so their actions cannot subject their municipal employer to § 1983 liability. With regard to District Attorney Williams and former District Attorney Abraham, the DA Defendants

argue that their employer, the District Attorney's Office, is not a "person" for purposes of § 1983 liability.  Finally, the DA Defendants argue that Rosario has not stated any policy or practice of the District Attorney's Office that caused his injuries.

Lastly, the DA Defendants argue that Rosario's state law claims against them should be dismissed because they are absolutely immune.

III. Legal Standard[7]

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45 (1957), abrogated in other respects by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  A claim may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."

---

[7] A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–521 (1972). In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir. 1999)).

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. <u>Sands</u>, 502 F.3d at 268.[8]

Although Rule 8 of the Federal Rules of Civil Procedure requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2) and <u>Conley</u>, 355 U.S. at 47).  Similarly, naked assertions devoid of further factual enhancement will not suffice.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 557).

--------

[8] In addition to the facts alleged in the complaint, the Court will take into account any other factual allegations or documents that Rosario has introduced into the record by way of his motion for appointment of counsel.  The Court will also consider any factual assertions by Rosario during the telephone conference held on-the-record before the Court with Rosario and defendants' counsel on January 9, 2014.  See footnote 2 of this memorandum for further explanation of the Court's practice with pro se litigants.

Although "conclusory" or "bare-bones" allegations will not survive a motion to dismiss, _Fowler_, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. _Phillips v. Cnty. of Allegheny_, 515 F.3d 224, 231 (3d Cir. 2008).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted. _Fowler_, 578 F.3d at 210. Any facts pleaded must be taken as true, and any legal conclusions asserted may be disregarded. _Id._ at 210-211. Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." _Id._ at 211 (quoting _Iqbal_, 556 U.S. at 679).

This two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pleaded in the complaint have "nudged [plaintiff's] claims" over the line from "conceivable to plausible." _Iqbal_, 556 U.S. at 679-680. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Id. at 678.

The Third Circuit has summarized the post-Twombly standard as follows:  "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (citations omitted) (quoting Twombly, 550 U.S. at 556).

IV.  Discussion

A.  § 1983 Claims Against the Warden Defendants

Rosario sues the Warden Defendants in their official capacities and their individual capacities.  Compl. ¶¶ 14-15.

1.  Official Capacity

The Warden Defendants argue that claims against them in their official capacity must fail because the City of Philadelphia is also a party to this suit.

16

Because the Warden Defendants are wardens of prisons in the Philadelphia prison system, the claims brought against the Warden Defendants in their official capacity are considered to be actions against the City of Philadelphia.   See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is not a suit against the official personally, for the real party in interest is the entity." (emphasis omitted)); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . .").

Claims under § 1983 against the Warden Defendants in their official capacities may be dismissed because the City of Philadelphia is the real party defendant in interest.  While actions brought against a government official in his or her individual or personal capacity seek to impose liability on the government official for actions taken under color of state law, official capacity actions represent another way to sue the municipality of which the officer is an agent.  See, e.g., Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988); see also Pennavaria v. Walton, No. 10-0415, 2010 WL 2650413, at *4 (W.D. Pa. June 30, 2010); Brice v. City of York, 528 F. Supp. 2d 504,

17

516 n.19 (M.D. Pa. 2007); <u>Kenny v. Whitpain Twp.</u>, No. 96-3527,
1996 WL 445352, at *2-3 (E.D. Pa. Aug. 6, 1996); <u>Verde v. City
of Phila.</u>, 862 F. Supp. 1329, 1336-37 (E.D. Pa. 1994).  Because
the City is a party to this case, the claims against the Warden
Defendants in their official capacities will, therefore, be
dismissed with prejudice as redundant.


   2.   <u>Individual Capacity</u>

   Rosario alleges that the Warden Defendants violated
his rights while he was incarcerated in several ways:  he was
the only one removed from his facility as a result of the murder
of Lance Mears; he never received documents from any prison
employee, including the wardens, of why he was moved from his
facility and of the status of the investigation of Lance Mears;
and he was improperly targeted as a result of the Warden
Defendants' investigation.  1/9/14 Rule 16 Conf. Trans. 19:13-
20:6.  Rosario also alleges that he was placed in solitary
confinement as a pretrial detainee in violation of his
constitutional rights.  <u>See, e.g.</u>, Compl. ¶ 40.  He asserts that
these actions violated his Fifth, Eighth, and Fourteenth

Amendment rights.[9]   The Warden Defendants argue that Rosario has

insufficiently pleaded that they are individually liable.   The

———————————————

[9] The Court analyzes Rosario's due process allegations under
the Fourteenth Amendment, rather than the Fifth Amendment.
Rosario fails to allege a Fifth Amendment claim against the
Warden Defendants because the Due Process Clause of the Fifth
Amendment only applies to federal officials.  See, e.g.,
Bergdoll v. City of York, 515 F. App'x 165, 170 (3d Cir. 2013)
(citing Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d
Cir. 1983)).

     The Court also finds that Rosario does not state an
individual capacity claim under § 1983 against the Warden
Defendants for denial of equal protection under the Fourteenth
Amendment.   To succeed in a claim under 42 U.S.C. § 1983 for
denial of equal protection, a plaintiff must prove the existence
of purposeful discrimination.  Batson v. Kentucky, 476 U.S. 79,
93 (1986).  The plaintiff must demonstrate that he received
"different treatment from that received by other individuals
similarly situated."  Andrews v. City of Phila., 895 F.2d 1469,
1478 (3d Cir. 1990).

     The Court can only discern one factual allegation to
support Rosario's equal protection claim:  Rosario was singled
out in that he was the only inmate transferred to another
facility following the murder of Lance Mears.  1/9/14 Rule 16
Conf. Trans. 19:13-16.  Rosario has not made any allegations
regarding any individuals who were similarly situated, but were
not transferred.  Therefore, Rosario's equal protection claims
against the Warden Defendants will be dismissed.  See, e.g.,
Solan v. Zickefoose, 530 F. App'x 109, 111 (3d Cir. 2013).

     Although Rosario alleges that the defendants, by failing to
prevent his wrongful imprisonment, deprived him of custody of
his child, such allegations are conclusory and lack any
plausible facts of how the Warden Defendants contributed to
Rosario's termination of parental rights.  Compl. ¶¶ 67-71.
Such allegations do not support the involvement of the Warden
Defendants in the family court proceedings.  Therefore,
Rosario's allegations regarding his termination of parental
rights do not state a claim regarding equal protection under the

Court will dismiss with prejudice Rosario's § 1983 claims against the Warden Defendants.

> ### a.   Legal Standard for § 1983 Individual Capacity Claim

When a plaintiff brings a § 1983 claim against a defendant in his or her individual capacity, the plaintiff must establish that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis omitted).  Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence." Id.  There is no liability in individual capacity § 1983 actions based on a theory of respondeat superior.  Monell, 436 U.S. at 693.

> ### b.   Pretrial Detainee Status

Rosario alleges several times in his complaint that he was a pretrial detainee during the time periods at issue.  The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from punishment that may not constitutionally be inflicted upon detainees.  See Bell v. Wolfish, 441 U.S. 520,

---

Fourteenth Amendment, cruel and unusual punishment under the Eighth Amendment, or due process under the Fourteenth Amendment.

535 n.16, 538-39 (1979).  The Eighth Amendment applies only after the state "has secured a formal adjudication of guilt" because prior to that time it has not acquired the "power to punish with which the Eighth Amendment is concerned."  Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977).  "In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions 'cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'"  Hubbard v. Taylor, 399 F.3d 150, 159 (3d Cir. 2005) (alterations in original) (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)).

The public records attached to the DA Defendants' motion illustrate that Rosario has been incarcerated during the entire time period at issue in his complaint.  See DA Defendants' Mot., Exs. A-B, ECF No. 6-1.  The Court therefore categorizes Rosario as a convicted prisoner and not a pretrial detainee.  See Hill v. Ocean Cnty. Jail Complex, No. 05-6034, 2006 WL 372984, at *2 n.2 (D.N.J. Feb. 16, 2006) (citing Hubbard, 399 F.3d at 156 n.9).  Accordingly, the Court will analyze Rosario's claims regarding his conditions of confinement under the Eighth Amendment, rather than under the Fourteenth

Amendment due process standard for pretrial detainees.  Cf. Laza
v. Reish, 84 F.3d 578, 580 (2d Cir. 1996).


              c.   Eighth Amendment Claims

        The Eighth Amendment protects prison inmates from
cruel and unusual punishment.  See, e.g., Farmer v. Brennan, 511
U.S. 825, 832 (1994).  Not all deficiencies and inadequacies in
prison conditions, however, amount to a violation of a
prisoner's constitutional rights.  See Rhodes v. Chapman, 452
U.S. 337, 349 (1981).  To assert an Eighth Amendment conditions
of confinement claim, a prisoner must satisfy both an objective
and subjective test.  See Wilson v. Seiter, 501 U.S. 294, 298
(1991).  Specifically, a prisoner must show that the alleged
deprivation is sufficiently serious and that he has been
deprived of the "minimal civilized measure of life's
necessities," such as food, clothing, shelter, sanitation,
medical care, or personal safety.  Farmer, 511 U.S. at 834
(quoting Rhodes, 452 U.S. at 347).  Only "extreme deprivations,"
however, are sufficient to present a claim for unconstitutional
conditions of confinement.  Hudson v. McMillian, 503 U.S. 1, 8-9
(1992).

        The practice of housing certain prisoners in isolation
from other inmates is not a condition of confinement that

violates the Eighth Amendment. Solitary confinement in and of itself does not violate Eighth Amendment prohibitions, and the temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief. Ford v. Bd. of Managers of N.J. State Prison, 407 F.2d 937, 940 (3d Cir. 1969) (footnote omitted); see also Washington—El v. Beard, No. 08-1688, 2011 WL 891250, at *3 (W.D. Pa. Mar. 11, 2011). Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. Hutto v. Finney, 437 U.S. 678, 686 (1978).

Rosario alleges that he was placed in solitary confinement for eight months. Compl. ¶ 22. The duration of an inmate's confinement, while not itself a controlling factor in Eighth Amendment analysis, nonetheless helps to gauge the cumulative burden of the deprivations that the inmate has endured. A relatively short exposure to harsh conditions is less onerous than a protracted exposure, and courts have, therefore, looked to the length, as well as the severity, of solitary confinement as one element of its constitutional validity. Johnson v. Anderson, 370 F. Supp. 1373, 1387 (D. Del. 1974), modified, 420 F. Supp. 845 (D. Del. 1976). Though there

is no uniform standard, the longer the stay in solitary confinement, the greater the chance it violates the Eighth Amendment.  <u>Paith v. Cnty. of Washington</u>, No. 06-00806, 2008 WL 2950763, at *6 n.14 (W.D. Pa. July 25, 2008), <u>aff'd</u>, 394 F. App'x 858 (3d Cir. 2010).

Despite the length of Rosario's placement in solitary confinement, Rosario has failed to allege inhumane prison conditions, such that he was deprived of basic necessities, or that the Warden Defendants acted with deliberate indifference in failing to protect his health or safety.  Rosario's allegations that he was transferred to a different facility and subjected to solitary confinement lack any facts to demonstrate that the conditions of his confinement deprived him of any basic need such as food, clothing, shelter, sanitation, medical care or personal safety.  Therefore, Rosario's § 1983 claims against the Warden Defendants for violation of the Eighth Amendment will be dismissed.  <u>See, e.g.</u>, <u>Jones v. Sec'y Pa. Dep't of Corr.</u>, No. 13-3834, 2013 WL 6610805, at *3 (3d Cir. Dec. 12, 2013); <u>Green v. Coleman</u>, No. 13-00008, 2013 WL 6185172, at *5 (W.D. Pa. Nov. 26, 2013).

d.   Due Process Claims

Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest.  For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  In determining whether a protected liberty interest exists, the court must consider:  (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of his confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement.  See Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000).

The plaintiff's placement in solitary confinement does not implicate an interest protected by the Due Process Clause. See Mearin v. Dohman, No. 06-4859, 2009 WL 3127760, at *8 (E.D. Pa. Sept. 29, 2009); see also Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995) (holding that the Due Process Clause does not create a liberty interest for an inmate to remain among the general prison population).  The Third Circuit has held that administrative segregation in the S.C.I. Graterford Restricted Housing Unit for periods as long as fifteen months does not create an atypical and significant hardship and, thus, does not

25

deprive an inmate of a liberty interest.  Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997); see also Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); Torres v. Fauver, 292 F.3d 141, 151-52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest).

The Due Process Clause also does not protect inmates from transfer from one institution to another, even if the change in facility subjects the inmate to more strict conditions of confinement.  Mearin, 2009 WL 3127760, at *9 (citing McKune v. Lile, 536 U.S. 24, 39 (2002), and Meachum v. Fano, 427 U.S. 215, 224-25 (1976)).  Furthermore, Rosario has not alleged that any state law or regulation gave him a liberty interest in preventing his transfer to a different facility in light of the murder investigation.  Rosario has not pleaded any facts to indicate that his transfer imposed an atypical and significant hardship in relation to ordinary prison life or to establish the presence or absence of procedures afforded him before and after his transfer.

To the extent that Rosario alleges a due process claim regarding his placement in solitary confinement or regarding his

transfer to a different facility, those claims against the
Warden Defendants will be dismissed.


    B.    State Law Claims Against the Warden Defendants

         The Warden Defendants do not move to have any of
Rosario's state law claims dismissed under Rule 12(b)(6).  Adams
and Delaney are included in Rosario's allegations related to his
state law torts.  See, e.g., Compl. ¶ 79 (alleging that "the
remaining Defendants had a[n] affirmative duty to make formal-
inquiries as superior of the City of Philadelphia Prisons
Department").  Because the Warden Defendants failed to move to
dismiss any of those claims, the Court finds that they may
therefore proceed.


    C.   § 1983 Claims Against the DA Defendants

         Rosario sues the DA Defendants in their official
capacities and their individual capacities.  Compl. ¶¶ 8-11.

1.   <u>Official Capacity</u>[10]

A suit against District Attorney Williams and former District Attorney Abraham, both serving as the District Attorney during the time period alleged in the complaint, is treated as a suit against the District Attorney's Office itself.  <u>Graham</u>, 473 U.S. at 166.

The Philadelphia District Attorney's Office, however, is not a separate legal entity for the purposes of § 1983.  In <u>Reitz v. County of Bucks</u>, the Third Circuit recognized that a district attorney's office is not an entity for purposes of § 1983 liability.  125 F.3d 139, 148 (3d Cir. 1997).  Moreover, "all suits against any department of the City must be brought in the name of the City itself because the departments of the City do not have an independent corporate existence." <u>City of Phila. v. Glim</u>, 613 A.2d 613, 616 (Pa Commw. Ct. 1992); <u>see also</u>

_____

[10] Rosario asserts an official capacity claim against Assistant District Attorneys Doyle and McCann.  Only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability.  Whether a particular official has final policymaking authority is a question of state law.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988) (citing <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483 (1986) (plurality opinion)).  Under Pennsylvania law, only the District Attorney possesses policymaking authority for the District Attorney's Office.  <u>Payson v. Ryan</u>, No. 90-1873, 1992 WL 111341, at *11 (E.D. Pa. May 14, 1992), <u>aff'd</u>, 983 F.2d 1051 (3d Cir. 1992).  Therefore, the DA Defendants' motion to dismiss is granted with respect to Rosario's claims against Doyle and McCann in their official capacities.

28

<u>Atkinson v. City of Phila.</u>, No. 99-1541, 2000 WL 295106, at *2
(E.D. Pa. Mar. 20, 2000).

Because the City of Philadelphia is named as a
defendant in this action and has already answered Rosario's
complaint, the official capacity claims against the DA
Defendants will be dismissed as redundant.  <u>See</u> <u>Joobeen v. City
of Phila. Police Dep't</u>, No. 09-1376, 2010 WL 844587, at *5 (E.D.
Pa. Mar. 4, 2010); <u>Cruz v. City of Phila.</u>, No. 07-493, 2007 WL
4190690, at *4 (E.D. Pa. Nov. 21, 2007); <u>Domenech v. City of
Phila.</u>, No. 06-1325, 2007 WL 172375, at *2 (E.D. Pa. Jan 18,
2007).


           2.  <u>Individual Capacity</u>

In his complaint, Rosario alleges that the DA
Defendants failed to properly investigate the murder of Lance
Mears and conspired with the Philadelphia Police Department in
doing so; conspired with members of the Department of
Corrections and county prison officials to house him in solitary
confinement; improperly prosecuted Rosario; and threatened a
recanting witness with prosecution if he did not testify for the
prosecution.  Compl. ¶¶ 22, 24-26, 30-32, 39-40.  The DA
Defendants assert absolute immunity.

Prosecutors are immune for actions performed in a quasi-judicial role.  Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992). Absolute immunity is afforded to prosecutors for acts "intimately associated with the judicial phase of the criminal process," such as initiating and prosecuting a criminal case. Imbler, 424 U.S. at 430-31.

Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  "[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," and are nonetheless entitled to absolute immunity.   Id. at 272 (quoting Imbler, 424 U.S. at 431 n.33). In particular, an out-of-court "effort to control the presentation of [a] witness' testimony" was entitled to absolute immunity because it was "fairly within [the prosecutor's] function as an advocate."  Id. at 272-73 (alterations in original) (quoting Imbler, 424 U.S. at 430 n.32).  A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for

the initiation of a prosecution or for judicial proceedings, however, are not entitled to absolute immunity.  Id. at 273 (citing Burns v. Reed, 500 U.S. 478, 494-96 (1991)).

Prosecutors are absolutely immune in § 1983 actions for their decisions to prosecute, and that immunity holds even against a civil plaintiff's allegation that he was prosecuted in bad faith or for an improper purpose.  The decision to initiate a prosecution is at the core of a prosecutor's judicial role. Kulwicki, 969 F.2d at 1463-64.  A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred.   Id. at 1464.  Furthermore, there is no evidence here of any personal animus that would take the DA Defendants' actions outside of the prosecutorial role.

The Court specifically addresses Rosario's allegations that the DA Defendants, and in particular Assistant District Attorney Doyle, threatened the prosecution's main witness, Carl Landsowne, with being prosecuted for the murder of Lance Mears if he recanted and refused to testify for the prosecution. Compl. ¶¶ 30, 39; 1/9/14 Rule 16 Conf. Trans. 13:2-25.

Whether Doyle or the other DA Defendants knew of or encouraged Landsowne to give false testimony, those actions are barred by absolute prosecutorial immunity.  See Imbler, 424 U.S.

31

at 431 n.34 (stating that prosecutors enjoy absolute immunity even when there is "willful use . . . of perjured testimony"); Burns, 500 U.S. at 489-90 (describing the absolute immunity of prosecutors from damages liability "for making false or defamatory statements in judicial proceedings . . . and also for eliciting false and defamatory testimony from witnesses"); Kulwicki, 969 F.2d at 1465 (noting that "soliciting false testimony from witnesses . . . is absolutely protected," as are "interviews generating evidence to be presented" in a court proceeding); Brawer v. Horowitz, 535 F.2d 830, 832 (3d Cir. 1976) (holding prosecutor immune from liability where allegations were that he and a witness "conspired to use perjured testimony and to conceal exculpatory evidence").

The act of preparing and calling witnesses in conjunction with an ongoing judicial proceeding is a fundamental prosecutorial function that is entitled to absolute immunity. Anderson v. Venango Cnty., Pa., No. 10-79, 2011 WL 147907, at *6 (W.D. Pa. Jan. 18, 2011), aff'd, 458 F. App'x 161 (3d Cir. 2012). Furthermore, pressuring individuals into bargains with the prosecution and forewarning them of future prosecution receives the protection of absolute immunity because those actions are directly connected to the prosecutor's judicial law-enforcement function. See Light v. Haws, No. 03-725, 2007 WL

2916461, at *5 (M.D. Pa. Oct. 5, 2007) (citing cases); <u>Cap v. Hartman</u>, No. 95-5871, 1996 WL 266701, at *4 (E.D. Pa. May 9, 1996).

Accordingly, the DA Defendants have absolute immunity against Rosario's § 1983 individual capacity claims, and those claims will be dismissed.[11]

_____

[11] The Court has stated above that it considers Rosario's conspiracy allegations as a civil conspiracy claim under Pennsylvania law.  The DA Defendants, however, make several arguments with regard to Rosario's conspiracy claims under 42 U.S.C. § 1985.  Inasmuch as Rosario's complaint arises from the prosecutor's decision to initiate and prosecute criminal charges, there is absolute immunity from liability under §§ 1983 and 1985.  <u>Parker v. Shefsko</u>, No. 98-5811, 1999 WL 248316, at *1 (E.D. Pa. Apr. 23, 1999); <u>see also</u> <u>Jorden v. Nat'l Guard Bureau</u>, 799 F.2d 99, 108 n.12 (3d Cir. 1986).  Because sections 1983 and 1985 require identical analyses where immunity is asserted, the conclusions set out earlier with respect to liability for damages under section 1983 are directly applicable here. <u>Raitport v. Provident Nat'l Bank</u>, 451 F. Supp. 522, 534 (E.D. Pa. 1978).

Lastly, Rosario alleges that the DA Defendants were involved in conspiracies with either the Philadelphia Police Department or prison officials in violation of § 1985.  To the extent those allegations involve administrative or investigative functions of a prosecutor, thus removing those allegations from the scope of absolute prosecutorial immunity, Rosario still fails to state a claim under § 1985.  In stating a claim for conspiracy, a plaintiff may not make "[b]are conclusory allegations of 'conspiracy' or 'concerted action,'" but is required to "expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such agreement can be inferred."  <u>Flanagan v. Shively</u>, 783 F. Supp. 922, 928 (M.D. Pa.), <u>aff'd</u>, 980 F.2d 722 (3d Cir. 1992). Allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad

33

D.   State Law Claims Against the DA Defendants

Rosario alleges various state law claims arising out of his arrest and prosecution for the murder of Lance Mears. Rosario alleges against the DA Defendants claims of negligence, malicious prosecution, abuse of process, false arrest, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, and a civil conspiracy involving the DA Defendants and members of the Philadelphia Police Department and county and state prison officials.  Compl. ¶¶ 54-65.  Rosario's state law claims against the DA Defendants fail to state a claim due to the DA Defendants' absolute immunity.

Under Pennsylvania law, "high public officials," including prosecutors, "are immune from suits seeking damages for actions taken or statements made in the course of their official duties."  Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001).  Conduct is within a prosecutor's duties or powers when it is "closely related" to the prosecutor's "official duties." McCormick v. Specter, 275 A.2d 688, 689 (Pa. Super. Ct. 1971).

---

objectives and the role each defendant allegedly played in carrying out those objectives."  Cap, 1996 WL 266701, at *3 (quoting Flanagan, 783 F. Supp. at 928).  Rosario's allegations against the DA Defendants, as interpreted as a claim under § 1985, do not meet this standard.

In applying immunity to district attorneys, the court emphasized that "it is the public interest—not that of the official involved—which provides the rationale for the immunity." Id. at 689.

        Rosario alleges that the DA Defendants, and particularly John Doyle, engaged in inappropriate conduct in the performance of their positions as prosecutors. Specifically, Doyle's conduct relating to the witness recantation pertains to the undertakings of a prosecutor's office in meeting with witnesses and preparing witnesses to testify. Doyle's meetings with the witness were thus closely related to his official duties. Accordingly, absolute immunity bars Rosario's state law claims against Doyle and the other DA Defendants. Therefore, those state law claims will be dismissed. See Anderson, 458 F. App'x at 165-66; Douris v. Schweiker, 229 F. Supp. 2d 391, 403 (E.D. Pa. 2002), aff'd sub nom. Douris v. Rendell, 100 F. App'x 126 (3d Cir. 2004).


        E. Leave to Amend

        The Third Circuit has held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.

35

Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  Dismissal without leave to amend is justified on the grounds of bad faith, undue delay, prejudice, or futility. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).

          The Court declines to allow Rosario leave to amend his complaint because the Court allowed the plaintiff to give a complete, on-the-record explanation of the facts of the case during the Rule 16 conference, and therefore the Court concludes that amendment would be futile.  Furthermore, Rosario's state law claims against the Warden Defendants will proceed, as will all those claims against the answering defendants, including the City of Philadelphia.


    V.    Conclusion

          For the reasons stated above, both the DA Defendants' and the Warden Defendants' motions to dismiss will be granted in their entirety.

          An appropriate Order shall issue.